1  UNITED STATES DISTRICT COURT
2  DISTRICT OF NEVADA

| Leo Winer, et al., | 2:13-cv-0231-JAD-CWH |
|---|---|
| Plaintiffs | **Order Denying Plaintiffs' Joint Motion for Default Judgment Against Paul Strickland, Jr. and Closing Case** |
| v. | |
| Steven A. Strickland, et al., | [ECF No. 62] |
| Defendants | |

The Leo Winer Trust and Michael Pepitone Trust sue brothers Steve and Paul Strickland and other parties for their alleged mistreatment of plaintiffs' investments. Paul Strickland is the sole remaining defendant, and plaintiffs move for default judgment against him for a second time.[1] Although Winer and Pepitone allege 15 claims against Paul, I find that none of them is properly supported by facts sufficient for me to enter default judgment against him. I therefore deny their motion for default judgment against Paul and dismiss this case.

**Background**

**A.    Factual history of this case**

Plaintiffs allege that they first came into contact with Steve Strickland when they invested in the commodities of physical silver and gold bullion through Advantage Metals, LLC, a company that was managed by Steve and another person who is not a party to this case.[2] In April 2011, Steve told plaintiffs that the co-manager of Advantage Metals had stolen "hundreds of thousands of dollars" from them.[3] Advantage Metals was sued by other investors, and a receiver

---

[1] ECF No. 26.

[2] ECF No. 25 at ¶¶ 13, 15.

[3] *Id.* at ¶ 16 (quotation marks omitted).

was appointed two months later to wind up the company's affairs.[4]  Shortly before this happened, Steve formed the company Advantage Trading Group in Wyoming,[5] and around this time, Steve flew his brother Paul out to meet Winer and Pepitone.[6]

Later that year, Steve visited Winer and Pepitone and persuaded them to sign a document authorizing Steve to transfer their silver interests to Steve personally and deposit those interests into separate accounts in Brink's depository in New York for future investment.[7] Under the agreement, Winer and Pepitone authorized Steve to serve as their "agent and attorney-in-fact relating to" their "holdings in Silver bars and/or bullion at Brinks, Incorporated" and to "contract for the sale" of those interests "through an authorized precious metals dealer . . . ."[8] They further authorized Steve to deliver the proceeds of any sale "in favor of investments in managed investment productions . . . in one or more accounts . . . opened and maintained by Steve . . . as the Account's Manager" or his "designee, including Advantage Trading Group" or in a similar "investment management vehicle" in plaintiffs' names.[9]

Steve then caused plaintiffs' silver interests to be sold in October 2011,[10] and he presented them with an "Offering and Disclosure Memorandum" for Advantage Trading, which purported to be an offer to sell plaintiffs "Equity Interest Units" in Advantage Trading.[11] The

---

[4] *Id.* at ¶¶ 16–17.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶ 14; *accord* ECF No. 62-1 at 6, ¶ 11.

[7] *Id.*

[8] *Id.* at ¶ 21.

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶ 23.

[11] *Id.* at ¶ 25.

document states that Advantage Trading is a commodities pool[12] that is exempt from registration under the Securities Act of 1933 and the Commodities Exchange Act.[13] Attached as addenda to the offering and disclosure memorandum were: (1) Advantage Trading's operating agreement; (2) an agreement to be signed by members of Advantage Trading acknowledging receipt and accepting the terms of the operating agreement; (3) an advisory agreement wherein Advantage Trading retains Paul as its commodity-trading advisor; (4) instructions for purchasing a subscription in the Advantage Trading pool; and (5) an agreement to purchase a subscription in Advantage Trading.[14]

Plaintiffs acknowledge that they did not execute the subscription agreement.[15] Instead they allege that an oral agreement to do so can be "cobbled together" from the "oral and written documents . . . ."[16] However, they later "deny that a contract exists, because there was not a meeting of the minds,"[17] and they allege that the agreement is unenforceable because it is an adhesion contract and unconscionable.[18]

Plaintiffs allege that, two months after Steve provided them with the offering and confidential disclosure memorandum, they "received a document from Paul" stating that each plaintiff "had invested $100,000."[19] Plaintiffs were confused and alarmed because they knew

---

[12] ECF No. 25-1 at 5.

[13] *Id.* at 8.

[14] *Id.* at 21–48.

[15] ECF No. 25 at ¶ 74.

[16] *Id.*

[17] *Id.* at ¶ 36.

[18] ECF No. 25 at ¶¶ 86–91, 102–04.

[19] ECF No. 25 at ¶ 24.

that their silver interests were worth far more.[20] The document states that on September 15, 2010, "we received $100,000.00 ($200,000 between the both of you)"[21] and then provides an "accounting" of the plaintiffs' transactions with Advantage Metals.[22] Thereafter, plaintiffs received "irregular and infrequent 'accountings.'"[23]

Steve next flew to Las Vegas in March 2012 to celebrate Pepitone's birthday.[24] Pepitone died shortly after Steve's visit, and Steve returned to Las Vegas to care for Winer.[25] Two of Winer's nephews arrived two days later and pushed Steve to put in writing Steve's allegations that it was his former co-manager of Advantage Metals that "screwed" Winer and Pepitone out of hundreds of thousands of dollars.[26] Steve refused, claiming advice of counsel, and blamed management of the company on his brother Paul.[27] Winer informed Steve that one of Winer's nephews was to become his caretaker; Steve then returned to Florida.[28]

Winer next tried to contact Steve, but his efforts were ignored until Steve finally answered in April 2012 claiming that his phone was broken.[29] Before that, Paul emailed Winer

---

[20] *Id.*; *accord* ECF No. 62-1 at 7, ¶ 14 (Winer attests that his report from Brinks stated that it released well over $400,000 to Steve).

[21] ECF No. 62-2 at 5.

[22] *Compare* ECF No. 62-2 at 5–8 (showing an "accounting" for purchases, commissions, and monies received from September 15, 2010, and March 24, 2011) *with* ECF No. 25 at ¶ 22 (alleging that Brinks released silver to Steve on October 7, 2011) *and* ECF No 25-2 at 2 (power of attorney authorizing Steve to obtain and sell plaintiffs' silver dated September 23, 2011).

[23] ECF No. 25 at ¶ 24.

[24] *Id.* at 26.

[25] *Id.*

[26] *Id.* at ¶¶ 26–27 (quotation marks omitted).

[27] *Id.* at ¶ 27.

[28] *Id.* at ¶ 28.

[29] *Id.* at ¶ 29.

4

complaining about Winer's "outrageous treatment of Steve and further said that silver prices were down another $0.25."[30] Paul also claimed that the only reasons why he had not terminated his "Advisory Agreement with Advantage" was "due to" Paul's relationship with Steve "and the participation of Margaret" in Advanced Trading.[31] On April 13 and 20, 2012, Winer received a "Weekly Account Report" from Paul, similar to the documents that Winer and Pepitone had previously received.[32]

Based on Paul's report dated April 20, 2012, Winer wrote Paul and Steve four days later, demanding that they confirm in writing and with copies of receipts that 6555.86 ounces of silver bullion[33] had been placed in deposit under the names of Winer's and Pepitone's respective trusts.[34] Winer also revoked the power of attorney in favor of Steve.[35] Paul responded via email "that he was not responsible for anything per his standard agreement."[36] The parties' contact then ceased, and plaintiffs filed this lawsuit against Steve, Paul, Advantage Trading, and two others.[37]

**B.  Procedural history of this case**

None of the defendants have answered plaintiffs' complaint in this case. Winer voluntarily dismissed the claims against VonWin Capital and Margaret Adams;[38] the claims

---

[30] *Id.* (quotation marks omitted).

[31] ECF No. 62-1 at 10, ¶ 28.

[32] ECF No. 25 at ¶ 30.

[33] Plaintiffs allege that this is the amount stated in Paul's April 20, 2012, report. *See id.* at 10, n.1.

[34] ECF No. 25 at ¶ 31.

[35] *Id.*

[36] *Id.* at ¶ 32.

[37] *Id.*

[38] ECF No. 34.

against Steve and Advantage Trading were dismissed without prejudice due to lack of service;[39] and the Clerk of the Court entered default against Paul.[40] Plaintiffs previously moved for default judgment against Paul, but I denied that motion without prejudice, identified the deficiencies in their submission, and gave them another chance to cure those deficiencies.[41]

Plaintiffs now reurge their motion for default judgment against Paul.[42] Though they offer more than last time—supplementing with an affidavit and more than 50 pages of exhibits—their proffer is still not sufficient to state a single claim against Paul. I therefore deny plaintiffs' motion for default judgment against Paul, dismiss the claims against him because my inability to find a single claim means that plaintiffs have not pled a viable claim against him, and close this case.

## Discussion

**A. Legal standard**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[43] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[44] The court has the power to require a plaintiff to provide additional proof of facts or damages to ensure that the requested relief is appropriate.[45] Whether to grant a

---

[39] ECF No. 42.

[40] ECF No. 40.

[41] ECF No. 61.

[42] ECF No. 62.

[43] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[44] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[45] *See* FED. R. CIV. P. 55(b)(2).

motion for default judgment lies within the district court's discretion,[46] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[47]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[48]

**B.  None of plaintiffs' claims against Paul are sufficiently supported by facts.**

The second and third *Eitel* factors require plaintiffs to demonstrate that they have stated a claim on which they may recover.[49] I denied Winer and Pepitone's first motion for default judgment against Paul without prejudice because they failed to say why their claims against Paul were sufficiently pleaded and how those claims entitled them to relief. Unfortunately, their second motion for default judgment suffers from these same deficiencies. Winer and Pepitone allege claims against Paul for intentional misrepresentation, fraud in the inducement, constructive fraud, negligent misrepresentation, fraud and misrepresentations by commodities trader advisor, breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment, civil conspiracy, aiding and abetting a fiduciary breach, and violations of the Commodities Exchange Act, and they move for default on all of them.[50] But the facts they've

---

[46] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[47] *Eitel*, 782 F.2d at 1471–72.

[48] *Id.* at 1472.

[49] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[50] Plaintiffs also move for a default judgment against Paul based on a number of additional "counts" that are not independent claims for relief or have no merit in this context, so I do not evaluate them separately. Unconscionable contract (Count 8) and adhesion contract (Count 10) are not claims for relief, they are defenses to the enforcement of a contract. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) ("It is well-established that

alleged do not support relief on any claim.

**1.      Intentional misrepresentation and fraud in the inducement**

Plaintiffs' first and second claims for relief are for intentional misrepresentation and fraud in the inducement.[51] Intentional misrepresentation and fraud in the inducement require the same elements of proof. Rule 9(b) of the Federal Rules of Evidence states that any allegation of fraud must be plead with particularity. Winer and Pepitone must prove five elements by clear and convincing evidence: (1) the defendant made a false representation, (2) the defendant knew or believed that statement was false or had no basis for the statement's truth, (3) the defendant intended to induce the plaintiffs to act, (4) the plaintiffs relied on the false statement, and (5) the plaintiffs suffered damages.[52] Winer and Pepitone do not provide any facts to show that Paul knew or believed his accountings were false or that his statement about their physical silver in deposit was false. Nor do they provide any facts to show that Paul had an insufficient basis for making these statements.

Also lacking are any facts to show that Paul induced Winer and Pepitone into a contract. They show instead that Steve presented them with all of the written contracts. Plaintiffs allege

---

unconscionability is a generally applicable contract defense . . ."). It appears that Nevada recognizes a claim for undue influence (Count 9) only in the context of a will contest, which is not the situation we have in this case. *See In re Estate of Bethurem*, 313 P.3d 237, 241 (Nev. 2013). Piercing the corporate veil (Count 16) is an alternative theory for liability to attach, not an independent cause of action. *See, e.g., Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract."); *George v. Morton*, No. 2:06-cv-1112 PMP-GEF, 2007 WL 680788, at *14 (D. Nev. Mar. 1, 2007) (request to pierce the corporate veil is a remedy, not a cause of action). Winding up and dissolution of a company (Count 17) is similarly a remedy, not a claim. And although plaintiffs pled a claim against Paul entitled "Equitable Estoppel," (*see* Count 15), they acknowledge that this "claim involves exclusively the amount of damages," so they do not argue for default based on the doctrine of equitable estoppel. See ECF No. 62 at 19.

[51] ECF No. 25 at 13–14.

[52] *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004); *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).

that Paul had many conversations on the phone with them, but they never explain what those conversations had to do with an oral agreement. Because the plaintiffs have not alleged any particular facts to support the first three elements of intentional misrepresentation and fraud in the inducement, I deny default judgment on these claims and dismiss them for failure to state a claim for relief.

### 2. Constructive fraud

Plaintiffs' third claim is for constructive fraud.[53] To prove constructive fraud, a plaintiff must show that the defendant breached some legal or equitable duty that is owed to the plaintiff.[54] This duty arises out of a fiduciary or confidential relationship.[55] The breach is considered fraudulent because it deceives or breaks the confidence between the parties.[56]

Winer and Pepitone have not shown that they had a fiduciary or confidential relationship with Paul. The evidence shows that Paul is an advisor only to Advantage Trading. While the plaintiffs have alleged that they trusted Steve like a brother, they have not provided facts to show that trust extended to Steve's brother Paul. While they state that they had many phone calls with Paul, they do not explain what these phone calls were about. They also state that they believed Paul's first account statement was wrong, suggesting they did not trust him early on. Winer and Pepitone thus have not established that they had a fiduciary or confidential relationship with Paul, so I deny default judgment on this claim and dismiss it.

### 3. Negligent misrepresentation

Plaintiffs' fourth cause of action is for negligent misrepresentation.[57] Negligent misrepresentation requires that a defendant, in the course of his business, (1) provides false

---

[53] ECF No. 25 at 14.

[54] *Long v. Towne*, 639 P.2d 528, 529–30 (Nev. 1982).

[55] *Id.* at 530.

[56] *Id.*

[57] ECF No. 25 at 14–16.

9

information in guiding plaintiffs in business transactions and (2) fails to exercise reasonable care or competence with providing that information.[58] The defendant will be liable for the plaintiffs' losses if they justifiably relied on the defendant's false statements.[59]

Winer and Pepitone argue that Paul gave false information when he sent an account statement claiming their physical silver was held in depository receipt, but they provide no evidence to show why this statement is false. They do explain why Steve's statements are false, but, they only conclude that Paul misrepresented the "facts and operation of the investments." Plaintiffs also do not provide facts to show how Paul was guiding them in any business transaction. Their evidence merely shows that he provided the weekly or monthly accounting reports. Thus, I deny default judgment on this claim and dismiss it.

### 4. Fraud and misrepresentation by a commodities advisor

In count five, the plaintiffs allege a claim for fraud and misrepresentations by a commodities trading advisor.[60] Title 7 U.S.C. § 6o prohibits a commodities advisor from employing any scheme or engaging in any practice that would defraud a participant.[61] Winer and Pepitone have not provided any facts to show that Paul defrauded them of their silver or money. Their conclusory statement that he engaged in practices to defraud them is still not enough. I therefore deny default judgment on this claim and dismiss it for failure to state a claim.

### 5. Contract-based claims

Winer and Pepitone also move for default judgment against Paul on their claims for breach of contract and breach of the implied covenant of good faith and fair dealing in counts six

---

[58] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

[59] *Id.*

[60] ECF No. 25 at 16.

[61] 7 U.S.C. § 6o (2017).

and seven.[62] These claims require plaintiffs to show that they had a valid contract with Paul.[63] Plaintiffs invite me to "cobble[] together" an oral agreement between them and Paul from Advanced Trading's offering memorandum documents and their oral communications with Paul.[64] The offering memorandum and accompanying subscription agreement is basically an agreement for plaintiffs to become members of the Advantage Trading company. The offering memorandum documents show that Advantage Trading retained Paul as a commodity-trading advisor.[65]

But plaintiffs do not provide details of any conversation that they had with Paul about them (1) becoming members of Advantage Trading, (2) being treated like they were members of that company, or (3) being led to believe that Paul would otherwise act as their commodity-trading advisor. Plaintiffs allege that Paul "responded to most of the Plaintiffs' emails by referring to himself and holding himself out as a 'manager [of Advantage Trading]' as well" as Steve.[66] So, they argue, Paul was obligated to perform managerial duties just like Steve. But it is unclear from the emails that Paul was claiming to be a manager of Advantage Trading: his signature block states "Managing Director" but does not identify of what, and his emails are sent from an algoadvisors@gmail.com account.[67] Plaintiffs' evidence does show that Paul sent them

---

[62] ECF No. 25 at 16–19.

[63] *See, e.g., May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (first element of breach of contract is that there is a valid contract); *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991) ("Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing").

[64] ECF No. 25 at ¶ 74; ECF No. 62 at 12.

[65] ECF No. 25-1 at 31–35.

[66] ECF No. 25 at ¶ 75.

[67] ECF No. 62-2 at 3–4.

11

"Monthly Commodity Statement[s]" from "Advantage Trading Group LLC,"[68] yet this is not sufficient to show that they had a meeting of the minds with Paul. Plaintiffs have not shown that a valid oral agreement exists between themselves and Paul, so I deny default judgment on their claims for breach of contract and breach of the implied covenant of good faith and fair dealing and I dismiss these claims.

### 6. Unjust enrichment

Plaintiffs' eleventh claim for relief is for unjust enrichment.[69] Unjust enrichment has three elements: (1) the plaintiff gave a benefit to the defendant, (2) that defendant enjoyed the benefit, and (3) the defendant's acceptance and retention of the benefit is inequitable under the circumstances.[70] Winer and Pepitone provide only conclusory statements to support this claim. It is unclear what benefit or money Paul got from them. Plaintiffs allege that it is inequitable for all of the defendants to keep the benefit because they fraudulently induced the plaintiffs into signing documents and used their assets for their own benefit, but Winer and Pepitone do not adequately show that Paul induced them into signing any contract or what benefit Paul received as a result. Thus, I deny default judgment on the unjust enrichment claim and dismiss it.

### 7. Civil conspiracy

In their twelfth cause of action, plaintiffs allege a civil fraud conspiracy.[71] Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to allege fraud with particularity and, in instances of multiple defendants, plaintiffs must allege each of the individuals' roles within the scheme.[72] Winer and Pepitone do not detail what Paul's specific role was in the alleged scheme.

---

[68] *Id.* at 9–10.

[69] ECF No. 25 at 23.

[70] *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 283 P.3d 250, 257 (Nev. 2012).

[71] ECF No. 25 at 24.

[72] *Swartz v. KPMG, LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

12

They merely refer to defendants' actions in general, without stating how Paul participated in contrast to Steve. Plaintiffs' bare allegations would not inform Paul—and does not inform me—of his individual role in the alleged fraud. I therefore deny default judgment on the plaintiffs' civil conspiracy claim and dismiss it.

### 8. Aiding and abetting

Plaintiffs' fourteenth claim for relief is entitled "aiding and abetting."[73] To show that a defendant is liable for civil aiding and abetting, the plaintiffs must establish that: (1) a defendant had a fiduciary relationship with the plaintiffs, (2) defendant committed a wrongful act that breached that duty, (3) another defendant knowingly and substantially helped in this breach, and (4) the plaintiffs suffered damages.[74] Winer and Pepitone provide no evidence or well-pled facts to show that Paul knew of the allegedly fraudulent scheme. Their conclusory statements that Paul aided and abetted in Steve's breach of his duty to them is not particular enough to satisfy Rule 9(b). I therefore deny default judgment on this claim and dismiss it.

### 9. Violations of securities laws

Winer and Pepitone do not state in their eighteenth cause of action what securities laws Paul has allegedly violated, and their conclusory statement that he violated these laws is not enough.[75] Plaintiffs state that he violated securities laws in general by referencing sections from the offering memorandum. But this does not inform me what the allegations against Paul are, and I find that plaintiffs have not shown that a valid agreement exists between them and Paul. Thus, I deny default judgment on this claim and dismiss it.

---

[73] ECF No. 25 at 25.

[74] *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014).

[75] ECF No. 25 at 27–28.

### 10. Violations of the Commodities Exchange Act

Plaintiffs' nineteenth and final claim is entitled "violation of the Commodities Exchange Act."[76] Under 7 U.S.C. § 6o, a commodity trading advisor should not employ a scheme or engage in any practice that will defraud a participant.[77] A private right of action under the Commodities Exchange Act also exists under section twenty-five.[78] Plaintiffs base their claim on a private right of action arising out of a contract.[79] They allege that Steve and Paul did not file notices, keep books, or comply with the limits for a commodity pool operator's registration requirements under the Commodity Futures Trading Commission's rules.[80] But plaintiffs have not shown that there is a binding contract between themselves and Paul. I therefore deny default judgment on this claim and dismiss it.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for default judgment against Paul Strickland, Jr. **[ECF No. 62] is DENIED, and all of plaintiffs' claims against this defendant are dismissed.** And because the dismissal of all claims against Paul Strickland, Jr. leaves no claims remaining in this case, the Clerk of the Court is directed to **CLOSE** this case.

DATED: November 7, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[76] ECF No. 25 at 28.

[77] 7 U.S.C. § 6o (2017).

[78] 7 U.S.C. § 25 (2017).

[79] 7 U.S.C. § 25 (b).

[80] 17 C.F.R. § 4.13 (2017).